**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

CLIFFORD MARCUS WINKLES,
*Defendant-Appellant*.

</td>
<td>

No. 13-56376

D.C. Nos.
2:04-cv-03527-DDP
2:00-cr-00359-DDP-2

OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
June 1, 2015—Pasadena, California

Filed July 31, 2015

Before: Milan D. Smith, Jr. and N. Randy Smith, Circuit
Judges and Royce C. Lamberth,* Senior District Judge.

Opinion by Judge Lamberth

---

* The Honorable Royce C. Lamberth, Senior District Judge for the U.S.
District Court for the District of Columbia, sitting by designation.

# SUMMARY**

## Habeas Corpus

The panel dismissed for lack of jurisdiction Clifford Marcus Winkles's Rule 60(b) motion for relief from judgment following the denial of his section 2255 motion to vacate, set aside, or correct his sentence.

The panel held that a certificate of appealability is required to appeal the denial of a legitimate Rule 60(b) motion for relief from judgment arising out of the denial of a section 2255 motion.

The panel held that a COA should only issue for the appeal arising from the denial of a Rule 60(b) motion in a section 2255 proceeding if the movant shows that (1) jurists of reason would find it debatable whether the district court abused its discretion in denying the Rule 60(b) motion and (2) jurists of reason would find it debatable whether the underlying section 2255 motion states a valid claim of the denial of a constitutional right.

The panel held that Winkles is not entitled to a COA because he has not made a substantial showing that the district court abused its discretion in denying his Rule 60(b) motion as to the two aspects of the Rule 60(b) motion he presses on appeal: (1) whether the district court should have reopened the time to appeal its denial of his original section

---

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

2255 motion and (2) whether the district court should have considered his purported amended section 2255 motion.

## COUNSEL

Ethan A. Balogh (argued) and Jay A. Nelson, Coleman, Balogh & Scott LLP, San Francisco, California, for Defendant-Appellant.

Nancy B. Spiegel (argued), Assistant United States Attorney; Stephanie Yonekura, Acting United States Attorney; Robert E. Dugdale, Assistant United States Attorney, Chief, Criminal Division, United States Attorney's Office, Los Angeles, California, for Plaintiff-Appellee.

## OPINION

LAMBERTH, Senior District Judge:

Appellant Clifford Marcus Winkles appeals the denial of his Rule 60(b) motion for relief from judgment following the denial of his section 2255 motion to vacate, set aside, or correct his sentence. Winkles was incarcerated for a term of 476 months following his conviction in federal district court. His conviction and sentence were affirmed on direct appeal.

Winkles previously filed a Rule 60(b) motion that the district court denied. We denied a certificate of appealability ("COA"). He later filed the Rule 60(b) motion at issue in this appeal. The district court denied this motion as well. A motions panel of this court referred the matter to this panel to determine whether a COA is required to appeal the denial of a legitimate Rule 60(b) motion, whether Winkles's appeal presents such a motion, and whether the district court abused its discretion in denying the Rule 60(b) motion.

We have jurisdiction to consider the first question under 28 U.S.C. §§ 1291, 2253(a). For the reasons that follow, we hold that a COA is required. We next conclude that Winkles is not entitled to a COA. Because a COA is required and Winkles is not entitled to one, we lack jurisdiction to consider his appeal of the district court's denial of his Rule 60(b) motion. The appeal is dismissed.

## BACKGROUND

Appellant Clifford Marcus Winkles was indicted on August 11, 2000, along with co-defendant Eric Ruiz. Winkles's Excerpts of Record ("ER") 479–87. After trial, a

jury convicted Winkles on all counts. ER 442. The district court then sentenced him to a prison term of 476 months. ER 443. Winkles appealed. We affirmed his conviction and sentence in an unpublished memorandum disposition on February 14, 2003. *United States v. Winkles*, 56 F. App'x 796 (9th Cir. 2003). The court held that there was sufficient evidence to sustain the conviction on all counts. *Id.*

## I. Original Section 2255 Motion

Winkles timely filed, by submitting to prison authorities for mailing, his original section 2255 motion on May 7, 2004.[1] ER 16, 431–41. Winkles's original motion raised six grounds for relief, based on ineffective assistance of counsel and denial of Fifth Amendment due process. ER 434–38.

The district court denied Winkles's motion on November 18, 2005 in an opinion that thoroughly discussed and rejected each of Winkles's arguments. ER 15–30.

Winkles did not receive this order in a timely fashion. He wrote to the district court on February 4, 2007 inquiring about the status of his section 2255 motion. ER 410. On June 20, 2007, the district court received a letter from Winkles stating again that he had not received the court's decision and asking for a "chance to respond" to it. ER 409. The government

---

[1] The time for filing a section 2255 motion is one year from the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1). This period includes the 90 days in which a defendant may petition for certiorari to the Supreme Court. *Clay v. United States*, 537 U.S. 522, 532 (2003). Under this rule, the motion was timely from the date of the expiration of Winkles's right to seek review at the Supreme Court, May 15, 2003.

concedes for purposes of appeal that Winkles did not receive the order denying his motion prior to this date.

In September 2007, Winkles filed a request to receive a copy of the order denying his section 2255 motion, which the district court granted by minute order. ER 401–03, 13. Winkles later declared that he did not receive the court's opinion until October 1, 2007. ER 12. Winkles also declared that he had previously sent a motion to amend his section 2255 motion that was evidently not received by the court. *Id.*

## II. December 23, 2007 Motion for Reconsideration

The district court construed the June 2007 letter from Winkles as a request regarding the filing of a motion for reconsideration. ER 14. It informed him that he was permitted to file such a motion. *Id.*

On December 23, 2007, Winkles filed a document styled as an "[e]x parte application for appointment of counsel; and/or authorization to file a petition under 28 U.S.C. § 2255." Government's Excerpts of Record ("GER") 1. In part, Winkles asserted that he had been without his trial transcripts until April 2005, despite repeated requests to prison authorities to deliver materials which were in prison storage. GER 4–5. He did not realize the transcripts had been delivered in April until July or August 2005. *Id.* He stated that, after receiving the transcripts, he enlisted the help of a fellow inmate and submitted a motion for leave to amend in August or September 2005. GER 5, 29. Winkles did not attach the amended motion or discuss its contents.

The district court construed Winkles's filing as a motion for reconsideration and denied it on March 18, 2008. ER 6.

The court held that Winkles had not cited "what new evidence, if any, he has discovered from the transcripts that support the merits of his claims," ER 9, and therefore, that no reason for reconsideration had been presented. *Id.*

## III. April 18, 2008 Rule 60(b) Motion and the First Version of the Amended Motion

Winkles filed a motion for relief from judgment pursuant to Rule 60(b)(1) and (6) on April 18, 2008. He set forth much the same argument he had advanced in his 2007 motion for reconsideration, namely that he was denied a full opportunity to set forth his section 2255 motion because of his difficult confinement conditions and because he was denied access to his trial transcripts for many months. ER 204. He also stated that he submitted an amended section 2255 motion on August 13, 2005 to "staff working the inmate mailroom, as required by prison procedures" and that the "envelope was sealed, and stamped by the staff, as all legal mail is which leaves the prison." ER 206.

Later, in his "Memorandum in Support," Winkles stated that the "same proposed version" as the August 2005 amended section 2255 motion was attached to his Rule 60(b) motion. ER 211. Winkles seems to be referring to a document called "Petitioner's Proposed Issues Related to § 2255 Petition." ER 221–57. This reconstructed version of the purported amended section 2255 motion sets forth a number of new bases for relief, based primarily on errors allegedly committed by the district court and prosecution. Winkles also alleges additional grounds of ineffective assistance of counsel. The document appears to be a reconstruction of whatever Winkles purportedly filed; it has

no date, no reference to the district court or his case number, and no certificate of service.

On March 3, 2009, the district court denied Winkles's motion, again construing it as a motion for reconsideration. ER 3. The court once again held that Winkles had not cited new evidence discovered in the transcripts that would support the merits of his claims. ER 5.

Winkles appealed to this court, and we remanded to the district court for the purpose of deciding whether to issue a COA. No. 09-55987, Dkt. 2. The district court denied the request for a COA, and we subsequently declined to issue one as well. *Id.*, Dkts. 3, 12.

## IV.     Winkles's Second Rule 60(b) Motion and the Second Version of the Amended Motion

On January 29, 2013, Winkles filed by mail a motion for relief from judgment pursuant to Rule 60(b)(6). ER 183–203. He then submitted a supplement to the motion on February 23, 2013. ER 59–64. Winkles stated once again that he had filed an amended section 2255 motion, this time claiming that he had submitted it on October 13, 2005, ER 185, not August 13, 2005, as he had previously contended. ER 206. He stated that the "constitutional errors he discovered from the withheld transcripts" were attached to his motion. ER 63. We construe this attachment as a different reconstructed version of his amended section 2255 motion. *See* ER 186, 63.

The second version of Winkles's amended section 2255 motion, which he attached to his most recent Rule 60(b) motion, alleges a few additional grounds for relief, in addition to recapitulating many of the grounds stated in the first

version of his amended motion. *See* ER 77–126. Once again, it appears to be, at best, a reconstruction of what Winkles purportedly filed in 2005. There is no date, no reference to the district court or his case, and no certificate of service.

The district court summarily denied Winkles's Rule 60(b) motion by minute order on June 28, 2013. ER 2.

## V. This Appeal

Winkles appealed the district court's denial of his 2013 Rule 60(b) motion. We remanded for the district court to determine whether a COA should issue. Dkt. 4. The district court denied a COA. ER 1.

In a separate matter, Winkles filed a petition for a writ of mandamus arguing that a COA was not required to appeal the denial of his Rule 60(b) motion. No. 13-72920, Dkt. 1. A panel of this court denied Winkles's petition for mandamus but directed the Clerk to file a copy of the petition in this case "as a motion for this court to review appeal No. 13-56376 without the requirement of a certificate of appealability." No. 13-72920, Dkt. 4.

Upon evaluation of that motion, a two-judge panel referred the matter to this panel with directions to determine whether Winkles's motion was a legitimate Rule 60(b) motion, whether a COA is required for Winkles's appeal, and, if so, whether one is merited in this case.[2]

---

[2] The government argues that our refusal to grant a COA for the appeal of Winkles's 2008 Rule 60(b) motion means that the COA requirement is law of the case. The government also contends that it is law of the case, for the same reason, that the district court did not abuse its discretion in

## ANALYSIS

The parties agree that this case involves a motion filed pursuant to Rule 60(b), not Rule 59(e). Winkles only presses two aspects of his Rule 60(b) motion on appeal: (1) that the district court should have reopened the time to appeal the denial of the original section 2255 motion and (2) that the district court should have considered the purported amended section 2255 motion. The government concedes that, insofar as these are the only aspects of the motion raised on appeal, Winkles's motion is a "legitimate" Rule 60(b) motion. Therefore, we assume, without deciding, that Winkles's Rule 60(b) motion was "legitimate."

**I.  A Certificate of Appealability is Required to Appeal the Denial of a Legitimate Rule 60(b) Motion for Relief From Judgment Arising Out of the Denial of a Section 2255 Motion**

Winkles argues that he need not obtain a COA before appealing the denial of his Rule 60(b) motion for relief from judgment. He presents arguments rooted in the text of section 2253 and in recent decisions of the Supreme Court. For the reasons elaborated below, Winkles's arguments fail.

---

refusing to consider Winkles's purported amended petition.

   In light of the discretionary nature of the law of the case doctrine and the motions panel's decision to expressly refer the issue to this panel, we decline to apply the law of the case doctrine and will consider the merits of Winkles's arguments. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (stating that a departure from the law of the case is appropriate where there has been an intervening change in the law or "other changed circumstances exist").

## A. Legal Background

28 U.S.C. § 2253(c)(1)(B) provides that "the final order in a proceeding under section 2255" may not be appealed unless "a circuit justice or judge issues a certificate of appealability." The policy underlying the COA requirement is to "prevent frivolous appeals from delaying the States' ability to impose sentences, including death sentences." *Barefoot v. Estelle*, 463 U.S. 880, 892 (1983) (analyzing the Certificate of Probable Cause requirement under the prior version of section 2253).

Federal Rule of Civil Procedure 60(b) "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances." *Jones v. Ryan*, 733 F.3d 825, 833 (9th Cir. 2013) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005)). An order denying a Rule 60(b) motion is indisputably a final, appealable order. In light of this fact and the policy just described, all circuits but the Fifth have concluded that a COA is required to appeal an order denying a Rule 60(b) motion in a habeas corpus proceeding. *West v. Schneiter*, 485 F.3d 393, 394 (7th Cir. 2007); *United States v. Hardin*, 481 F.3d 924, 926 (6th Cir. 2007); *Spitznas v. Boone*, 464 F.3d 1213, 1218 (10th Cir. 2006); *United States v. Lambros*, 404 F.3d 1034, 1036 (8th Cir. 2005); *United States v. Vargas*, 393 F.3d 172, 174–75 (D.C. Cir. 2004); *Reid v. Angelone*, 369 F.3d 363, 369 (4th Cir. 2004); *Gonzalez v. Sec'y for Dep't of Corr.*, 366 F.3d 1253, 1264–67 (11th Cir. 2004) (en banc), *aff'd on other grounds sub nom. Gonzalez v. Crosby*, 545 U.S. 524 (2005); *Kellogg v. Strack*, 269 F.3d 100, 103 (2d Cir. 2001). Additionally, the Fifth Circuit has sharply limited the circumstances where a COA is not required for such an appeal. *See Ochoa Canales v. Quarterman*, 507 F.3d 884,

888 (5th Cir. 2007) (per curiam) (holding that a COA is not required "only when the purpose of the [Rule 60(b)] motion is to reinstate appellate jurisdiction over the original denial of habeas relief").**[3]**

There are two Ninth Circuit decisions relevant to the present issue. First, we held in *Lynch v. Blodgett*, 999 F.2d 401 (9th Cir. 1993), that a Certificate of Probable Cause ("CPC"), the predecessor analogue to the COA under the former version of section 2253, was required to appeal the denial of a Rule 60(b) motion in a section 2254 habeas corpus proceeding. *Id.* at 402–03.

As for the current version of section 2253, we held without discussion in *Langford v. Day*, 134 F.3d 1381 (9th Cir. 1998), that a COA is required to appeal the denial of a Rule 60(b) motion. *Id.* at 1382. The *Langford* court held that it did not have to decide whether the current version of section 2253 applied because the petitioner could not meet the more generous standard for issuance of a CPC under the old statute. *Id.* Thus, the court implicitly held that the petitioner would have needed a COA to pursue his appeal.

**B. Discussion**

We structure our analysis around the bases for Winkles's two primary arguments in favor of his position that a COA is not required: the text of section 2253(c) and the context provided by the Supreme Court's recent decision in *Harbison v. Bell*, 556 U.S. 180 (2009), interpreting that provision.

---

**[3]** The Third Circuit has held without analysis that a COA is required in this context. *See Morris v. Horn*, 187 F.3d 333, 339 (3d Cir. 1999).

### 1. Text

Winkles argues that the statutory text of section 2253 supports his contention that the COA requirement does not apply in this context. The statute requires a COA for the appeal of "*the* final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1)(B) (emphasis added). This implies, Winkles argues, that Congress only intended the COA to apply to one order per section 2255 proceeding, i.e. the order denying the section 2255 motion.

In keeping with the reasoning of *Lynch* and that of many of our sister circuits, we conclude that contrary to Winkles's interpretation, the text of section 2253(c)(1)(B) supports imposing a COA requirement to appeal the denial of a Rule 60(b) motion for relief from judgment arising out of the denial of a section 2255 motion.

Congress's use of the word "the" in section 2253(c)(1)(B) does not mean that the COA requirement only applies to one order per section 2255 proceeding. Winkles's preferred reading runs contrary to the Dictionary Act, which states that in "determining the meaning of any Act of Congress, unless the context indicates otherwise, words importing the singular include and apply to several persons, parties, or things." 1 U.S.C. § 1. Because the purpose of section 2253 is in part to "prevent frivolous cases from clogging appellate dockets," the context of the statute indicates that Congress's use of the term "the" does not signify that it intended to limit the COA requirement to only one order per section 2255 proceeding. *See Vargas*, 393 F.3d at 174; *cf. Lynch*, 999 F.2d at 403 (holding that the "obvious purpose" of the predecessor version of section 2253 was to create "discretionary appellate review for habeas petitions filed by state prisoners").

Winkles's preferred reading of section 2253(c) would also be contrary to the rule of statutory construction that "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change" or when it "adopts a new law incorporating sections of a prior law." *Lorillard v. Pons*, 434 U.S. 575, 580–81 (1978). The earlier version of section 2253 provided that the prior analogue to the COA, the CPC, was required to appeal "the final order in a habeas corpus proceeding." *Reid*, 369 F.3d at 368. Courts "consistently required a [CPC] when reviewing orders denying Rule 60(b) motions in habeas actions." *Id.* When Congress elected not to change the language quoted above in enacting the COA requirement as part of the Antiterrorism and Effective Death Penalty Act (AEDPA), we may presume that it accepted the existing judicial interpretation of the CPC, which held that a CPC was needed to appeal more than one order per habeas corpus proceeding, including the denial of a Rule 60(b) motion for relief from judgment. *Id.*

### 2. *Harbison*

The Supreme Court has interpreted section 2253(c)(1)(A), the analogous COA provision regarding appeal of section 2254 habeas petitions, as "govern[ing] final orders that dispose of the merits of a habeas corpus proceeding—a proceeding challenging the lawfulness of the petitioner's detention." *Harbison*, 556 U.S. at 183. Given that section 2255 "was intended to mirror § 2254 in operative effect," and that the language used in sections 2253(c)(1)(A) and (c)(1)(B) is functionally identical, we may apply *Harbison*'s reasoning to Winkles's section 2255 motion. *See Jones*, 733 F.3d at 830 n.1 (quoting *Reed v. Farley*, 512 U.S. 339, 353 (1994)).

The Court ruled in *Harbison* that a COA is not required to appeal the denial of a motion to enlarge federally appointed counsel's authority under 18 U.S.C. § 3599. 556 U.S. at 182–83. The case involved attorneys appointed by a federal district court to represent a petitioner seeking federal habeas relief. After the habeas petition was denied, the attorneys moved the district court to expand their representation to include state clemency proceedings. *Id.* The motion was denied as seeking relief beyond the scope of section 3599. *Id.*

Winkles asks us to take a substantial step beyond *Harbison* and conclude that the COA requirement does not apply to an appeal of a "legitimate" Rule 60(b) motion for relief from judgment following the denial of a section 2255 motion. The Supreme Court held in *Gonzalez* that a "legitimate" Rule 60(b) motion in the habeas context is one that "attacks 'some defect in the integrity of the federal habeas proceedings.'" *United States v. Washington*, 653 F.3d 1057, 1060 (9th Cir. 2011) (quoting *Gonzalez*, 545 U.S. at 532). This is in contrast to a Rule 60(b) motion that advances a "claim," i.e. "an asserted federal basis for relief from a state court's judgment of conviction." *Gonzalez*, 545 U.S. at 530. The latter type of Rule 60(b) motion is treated as a second or successive habeas petition, and it must meet the stringent requirements for the filing of second or successive petitions. *Id.* Although *Gonzalez* was limited to section 2254 actions, we apply the case's holding to section 2255 motions as well. *United States v. Buenrostro*, 638 F.3d 720, 722 (9th Cir. 2011) (per curiam).

The government concedes that Winkles's motion is a "legitimate" Rule 60(b) motion as to the portions raised on appeal. In light of this concession, we consider Winkles's

three step argument rooted in the Supreme Court's decisions in *Harbison* and *Gonzalez*:

(1) A legitimate Rule 60(b) motion necessarily does not relate to the substantive claims made in an underlying section 2255 motion.

(2) The COA requirement only applies to orders that dispose of the merits in a section 2255 proceeding.

(3) Therefore, a COA is not required to appeal an order denying a legitimate Rule 60(b) motion.

In light of *Harbison* and *Gonzalez*, we have twice expressed an interest over the last few years in scrutinizing the COA requirement with respect to Rule 60(b) motions. *See Washington*, 653 F.3d at 1065 n.8 (stating in dicta that the question of whether a COA is required to appeal the denial of a "legitimate Rule 60(b)(4) motion" is "open in our circuit"); *Jones*, 733 F.3d at 832 n.3 (observing in dicta that if the petitioner were "appealing the denial or dismissal of a valid Rule 60(b) motion, he may have had no need for a COA"). A Third Circuit panel recently made similar musings in dicta. *See Wilson v. Sec'y Penn. Dep't of Corr.*, 782 F.3d 110, 115 (3d Cir. 2015).

We conclude that the reasoning of *Harbison* does not indicate that an appeal from a Rule 60(b) motion for relief from judgment in this context is exempt from the COA requirement. It is anomalous to read the Court as having overturned the statutory construction of every other circuit court of appeals without recognition of having done so or reasoning justifying the act. Such a reading is stranger still in light of the fact that in the Court's only direct statement about

the issue, it declined to reject the prevailing interpretation of the circuits that the COA requirement applies in this situation. *See Gonzalez*, 545 U.S. at 535 n.7 (declining to decide if a COA was required to appeal the denial of a Rule 60(b) motion but observing that "the COA requirement appears to be a more plausible and effective screening requirement, with sounder basis in the statute, than the near-absolute bar imposed here by the Court of Appeals").

Furthermore, the matter before the Court in *Harbison*, an order on a motion to enlarge the authority of appointed counsel, was wholly distinct from the habeas petition in that case. Put simply, the order in *Harbison* did not pertain to the district court's adjudication of the habeas petition. For example, an order setting the authority of appointed counsel does not touch on the merits of the habeas petition nor consider any alleged defects in the integrity of the proceedings arising out of the district court's adjudication of the petition.

Those courts that have extended *Harbison* to the appeal of other types of orders in habeas proceedings have done so when the order had similarly little to do with the adjudication of the habeas petition. In *Lambright v. Ryan*, 698 F.3d 808 (9th Cir. 2012) and *United States v. Fulton*, 780 F.3d 683 (5th Cir. 2015), we and the Fifth Circuit cited *Harbison* in holding, respectively, that a COA is not required to appeal an order modifying a protective order in a habeas corpus proceeding or an order transferring a section 2255 motion. *Lambright*, 698 F.3d at 817 n.2; *Fulton*, 780 F.3d at 687–88. By contrast, a legitimate Rule 60(b) motion for relief from judgment arising out of the denial of a section 2255 motion pertains to the district court's adjudication of the section 2255 motion.

**C.  Conclusion**

We conclude—in keeping with the Supreme Court's holding in *Harbison*, the text of section 2253(c), and the policy underlying the statute—that a COA is required to appeal the denial of a Rule 60(b) motion for relief from judgment arising out of the denial of a section 2255 motion.

## II.  Standard for Issuance of a Certificate of Appealability

Our last statement about the standard to be applied for issuance of a COA in this context came in *Lynch*, where we considered the standard for issuance of a CPC.  We held that a CPC should only issue upon a "substantial showing that the district court abused its discretion by denying the Rule 60(b) motion."   *Lynch*, 999 F.2d at 403 (quoting *Lindsey v. Thigpen*, 875 F.2d 1509, 1512 (11th Cir. 1989)).  We have not yet determined the standard that should be applied to the COA requirement under the current section 2253 and its requirement that a COA only issue upon "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Courts of appeals that have articulated standards for issuance of a COA in this context have generally drawn from the Supreme Court's decision in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *United States v. Arrington*, 763 F.3d 17, 23 (D.C. Cir. 2014); *Spitznas*, 464 F.3d at 1225; *Reid*, 369 F.3d at 371; *Gonzalez*, 366 F.3d at 1267.  In *Slack*, the Court determined the standard governing issuance of a COA when the district court denies a habeas petition on procedural grounds.  The Court articulated a two part standard:

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack*, 529 U.S. at 484.[4] The Court held that this test "gives meaning to Congress's requirement that a prisoner demonstrate substantial underlying constitutional claims and is in conformity with the meaning of the 'substantial showing' standard provided in *Barefoot* . . . and adopted by Congress in AEDPA." *Id.* The substantial showing standard is met when "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* at 484 (citation and internal quotation marks omitted).

Similarly, we hold that a COA should only issue for the appeal arising from the denial of a Rule 60(b) motion in a section 2255 proceeding if the movant shows that (1) jurists of reason would find it debatable whether the district court

---

[4] Because section 2253(c)(2) imposes the same standard for issuance of a COA in both section 2254 and 2255 proceedings, cases stating the COA standard in section 2254 habeas proceedings are fully applicable to section 2255 proceedings. *See United States v. Martin*, 226 F.3d 1042, 1046 n.4 (9th Cir. 2000).

abused its discretion in denying the Rule 60(b) motion and (2) jurists of reason would find it debatable whether the underlying section 2255 motion states a valid claim of the denial of a constitutional right.  In so holding, we adopt the test set forth by the Second Circuit in *Kellogg*.  269 F.3d at 104.

This test is appropriate because it accords with the Supreme Court's test in *Slack* while incorporating the standard of review applicable to Rule 60(b) motions.  The test for issuance of a COA is basically an initial peek at how the appeal would proceed, based on the standard of review that a court of appeals will ultimately apply.  For example, the dismissal of a habeas petition is subject to de novo review. *Alaimalo v. United States*, 645 F.3d 1042, 1047 (9th Cir. 2011).  Therefore, the COA standard is based on a de novo evaluation of the district court's order.  *See Slack*, 529 U.S. at 484.

In order to maintain continuity with this approach, the COA test for appeal of the denial of a Rule 60(b) motion should coincide with the standard of review the court will apply during the appeal.  Here, that standard of review is abuse of discretion.  *See Cook v. Ryan*, 688 F.3d 598, 608 (9th Cir. 2012).  The standard we adopt today is also in keeping with our approach to CPCs in the Rule 60(b) context under pre-AEDPA law. *Lynch*, 999 F.2d at 403 (holding that a CPC should issue only if the petitioner "has made a substantial showing that the district court abused its discretion by denying the Rule 60(b) motion") (citation omitted).

### III.    Winkles is Not Entitled to a Certificate of Appealability

Winkles only presses two aspects of his Rule 60(b) motion on appeal:  (1) that the district court should have reopened the time to appeal its denial of his original section 2255 motion and (2) that it should have considered his purported amended section 2255 motion.  We conclude that Winkles has not made a substantial showing that the district court abused its discretion in denying his Rule 60(b) motion as to these issues.  Because both prongs of the COA standard must be satisfied and he has failed to meet one of them, Winkles is not entitled to a COA.

### A.  The District Court Did Not Abuse Its Discretion By Refusing to Reopen the Time for Appeal

Winkles argues that the district court should have reopened the time to appeal the denial of his original section 2255 motion.

Federal Rule of Appellate Procedure 4(a)(6) governs a district court's authority to reopen the time to file an appeal. It states that a district court may reopen the time to file an appeal for 14 days if all of the following conditions are met:

> (A)    the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77(d) of the entry of judgment or order sought to be appealed within 21 days after entry;

> (B)    the motion is filed within 180 days after the judgment or order is entered

or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77(d) of the entry, whichever is earlier; and

(C)     the court finds that no party would be prejudiced.

Fed. R. App. P. 4(a)(6).

This rule interacts with Federal Rule of Civil Procedure 77(d), which states that the clerk must serve notice of the entry of an order or judgment on each party who is not in default for failure to appear. Fed. R. Civ. P. 77(d)(1). The rule provides that "[l]ack of notice of the entry does not affect the time for appeal or relieve—or authorize the court to relieve—a party for failing to appeal within the time allowed, except as allowed by Federal Rule of Appellate Procedure (4)(a)." Fed. R. Civ. P. 77(d)(2).

Winkles concedes that he did not meet the 180 day outer limit stated in part (B) above and, therefore, cannot receive relief pursuant to Fed. R. App. P. 4(a)(6). He argues, instead, that the district court should have used its equitable powers under Rule 60(b)(6) to vacate the prior judgment and reenter it, thus restarting the clock on his time to appeal. *See* 16A Charles Alan Wright et al., *Federal Practice and Procedure* § 3950.6 (4th ed. 2008) (discussing this mechanism as a "onetime practice" of district courts). He roots his argument in the injustice arising from the district court's failure to notify him of the denial of his section 2255 motion. The government concedes Winkles was not served with the court's order in a timely fashion.

We have repudiated, however, the practice of vacating and reentering judgments to reopen the time for appeal as a remedy for lack of notice. We held in *In re Stein*, 197 F.3d 421 (9th Cir. 1999), that "Rule 4(a) and Rule 77(d) now form a tessellated scheme; they leave no gaps for Rule 60(b) to fill." *Id.* at 426. The *Stein* court concluded that Fed. R. App. P. 4(a)(6) sets an "outer limit" on the time to appeal; "[a]llowing further extensions or tampering with those time limits for conferring appellate jurisdiction upon us, based solely on notice problems, . . . would undermine (or even eliminate) the very purpose and need for the rule itself." *Id.* at 425. The court approvingly quoted an Eighth Circuit case stating that these rules "preclude[] the use of Fed. R. Civ. P. 60(b)(6) to cure problems of lack of notice." *Id.* (quoting *Zimmer St. Louis, Inc. v. Zimmer Co.*, 32 F.3d 357, 360–61 (8th Cir. 1994)).

We have noted an exception to Fed. R. App. P. 4(a)(6)'s limit on a district court's authority to reopen the time for appeal. *See Mackey v. Hoffman*, 682 F.3d 1247 (9th Cir. 2012). In *Mackey*, a habeas petitioner moved the district court to reopen the time for appeal. *Id.* at 1250. He argued that he had not received notice of the denial of his petition because his attorney ceased representing him but did not withdraw as attorney of record. *Id.* at 1253. Therefore, "Mackey was deprived of the opportunity to proceed *pro se* and to personally receive docket notifications from the court." *Id.*

The *Mackey* court held that a district court had discretion in that instance to vacate and reenter a judgment pursuant to Rule 60(b)(6) to reopen the time for appeal because the petitioner was not seeking to "cure a Rule 77(d) 'lack of notice' problem." *Id.* at 1252, 1254. Instead, he was seeking

to cure a problem "caused by his being misled and abandoned by his counsel of record." *Id.* at 1252. Thus, he was not receiving relief pursuant to Fed. R. App. P. 4(a)(6). *Id.* at 1253.

Winkles argues that we should further expand *Mackey* to cover his situation. He distinguishes *In re Stein* on its facts because that case involved sophisticated attorney litigants. ARB 20.

Winkles's argument is unpersuasive because it ignores the fact that Fed. R. App. P. 4(a)(6) expressly contemplates a litigant like himself who did not receive notice of an order as required by Rule 77(d). *See* Fed. R. App. P. 4(a)(6). Indeed, other courts of appeals have construed Fed. R. App. P. 4(a)(6)'s 180 day time limit to be mandatory in very similar factual situations. *See In re Sealed Case (Bowles)*, 624 F.3d 482, 488–89 (D.C. Cir. 2009) (holding Rule 4(a)(6) to be binding despite the fact that the case was sealed, making it impossible for the appellant to independently check the docket); *Clark v. Lavallie*, 204 F.3d 1038, 1040–41 (10th Cir. 2000) (holding that an unrepresented federal prisoner was not entitled to Rule 60(b) relief to reopen the time for appeal for lack of notice because the "essence of Rule 4(a)(6) is finality of judgment" and its 180 day limit is "specific and unequivocal").

These cases are in keeping with the implications of *Bowles v. Russell*, 551 U.S. 205 (2007). There, the Supreme Court held that the statutory time limit for taking an appeal is jurisdictional. *Id.* at 213. Because meeting the deadline to appeal is jurisdictional, courts do not have authority to create "equitable exceptions" to it. *Id.* at 214. Thus, a motion to reopen the time to appeal because of a lack of notice may not

be granted by way of an "equitable exception" through Rule 60(b).

Jurists of reason would not find it debatable that the district court abused its discretion by denying this aspect of his Rule 60(b) motion.

### B. The District Court Did Not Abuse Its Discretion By Refusing to Consider Winkles's Amended Section 2255 Motion

Winkles also argues that the district court abused its discretion by failing to deem his purported amended section 2255 motion filed as of August 2005 and refusing to consider the claims raised therein. Jurists of reason would not find it debatable that the district court abused its discretion on this basis because Winkles failed to file his purported amended section 2255 motion prior to the district court ruling on his initial section 2255 motion.

#### 1. Legal standard

Rule 3(d) of the Rules Governing § 2255 Proceedings governs the filing procedure for Winkles's amended section 2255 motion. That rule was made effective December 1, 2004, and Winkles's amended motion was allegedly filed in August 2005. Rule 3(d) codifies the prison mailbox rule, which states that a motion or other paper submitted by a prisoner is deemed filed as of the date he submits it to prison authorities for mailing if certain conditions are met. *See Huizar v. Carey*, 273 F.3d 1220, 1223 (9th Cir. 2001). We have held, under the common law prison mailbox rule, that an inmate bears the initial burden of alleging timely filing. *Caldwell v. Amend*, 30 F.3d 1199, 1202–03 (9th Cir. 1994).

Rule 3(d) provides:

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

Rules Governing § 2255 Proceedings, R. 3, 28 U.S.C. foll. § 2255. 28 U.S.C. § 1746(2) states that a sworn declaration executed in the United States may be evidenced by a document subscribed to by the declarant and containing substantially the following: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)."

We have not authoritatively construed the requirements of Rule 3. However, we have interpreted Fed. R. App. P. 4(c)(1), substantially identical to Rule 3(d), to generally require a "declaration or notarized statement" to prove timely filing. *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009). The *Douglas* court held, however, that such a filing was unnecessary in that case because the prison's records showed the inmate's complaint as having been mailed on the purported date of filing. *Id.*

Thus, *Douglas* indicates that at a minimum, an inmate must file a sworn declaration or notarized statement as set forth in the rule to meet the initial burden of proving timely filing unless more probative evidence, such as the prison mail log, is available. Consistent with the text of the rule, a sworn declaration or notarized statement in support of timely filing under Rule 3 must (1) include a statement indicating in some fashion that postage was prepaid and (2) include the date the filing was submitted to prison officials. Courts have strictly construed the substantially identical text of Fed. R. App. P. 4(c) as requiring that both of these statements be included in the declaration or notarized statement to comply with the rule. *Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 84 n.2 (3d Cir. 2013); *Price v. Philpot*, 420 F.3d 1158, 1166 (10th Cir. 2005); *United States v. Craig*, 368 F.3d 738, 740 (7th Cir. 2004).

Winkles contends that Rule 3's use of the word "may" means these provisions are only suggestions. To adopt this interpretation, however, would render this portion of the rule mere surplusage. Such an interpretation would be contrary to the "cardinal" canon of statutory construction that courts must interpret statutes so that "no clause, sentence, or word shall be superfluous, void, or insignificant." *See United States v. Ceballos-Martinez*, 387 F.3d 1140, 1144–45 (10th Cir. 2004) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

Indeed, reading these statements as superfluous would remove from the rule provisions that have evident value as a matter of policy. For example, requiring an inmate to swear to the date he gave his filing to prison officials for mailing functions as a screening mechanism on false claims of timely mailing. It also creates a more readily confirmed or rebutted

evidentiary record.  The postage requirement also has value because, as one court reasoned, "mail bearing a stamp gets going, but an unstamped document may linger."  *Craig*, 368 F.3d at 740.

### 2.  Application

As a threshold matter, we observe that there is little evidence of the amended motion's contents, or even its existence.  A copy of the amended section 2255 motion appears never to have reached the district court and it is not before us either.  As counsel conceded at oral argument, the two purported amended motions in the record are mere reconstructions of whatever Winkles claims he filed in 2005.  Even if a reconstruction might be permissible in a different circumstance, the two purported amended motions before us are of dubious value,  setting forth different claims and appearing on their face to have been separately created.

It is with this woefully inadequate record in mind that we now consider Winkles's evidence of timely filing by mail.  Winkles has not submitted evidence of the prison's mail logs or other more probative evidence of mailing.  Therefore, he was required to submit a sworn declaration or notarized statement in support of timely filing.

There are two sworn declarations in the record that discuss the filing of the amended section 2255 motion and meet the requirements of section 1746.  First, a fellow inmate named Frank Gabaldon executed a sworn declaration on December 1, 2007.  GER 29.  Gabaldon states that the amended motion was given to the mail room guard "between August and September 2005" and that Gabaldon allowed Winkles to "borrow several stamps to place on both

envelopes." *Id.* Second, Winkles executed a sworn declaration on October 3, 2007. ER 12. In it, Winkles states only that he "placed [his] motion to amend [his] 2255 motion into the hands of correctional officers as required by prison mail rules." *Id.* The declaration says nothing about the date this occurred, calling into question his unsworn representations of mailing on August 13, 2005, ER 206, or October 13, 2005, ER 185. Thus, Gabaldon's declaration is the only one in the record that is remotely responsive to Rule 3(d)'s requirements.

These declarations and the evidentiary record before the district court show that jurists of reason would not find it debatable that the district court abused its discretion by refusing to consider the purported amended section 2255 motion. Here, the district court had before it conflicting evidence of the contents of the filing allegedly made, inconsistent representations by Winkles about the date of mailing, and no sworn declaration from Winkles himself as to the date of mailing. Although Gabaldon's declaration vaguely refers to Winkles having deposited his amended motion with prison officials in "August or September 2005," this declaration is insufficient in the context of the record before the district court to lead us to view the district court's decision not to credit the claimed date of filing as an abuse of discretion.

We conclude that Winkles has failed to make a substantial showing that the district court abused its discretion by refusing to consider his purported amended motion. Whatever the effectiveness of Gabaldon's declaration as to the date of deposit with prison officials in a vacuum, the circumstances presented to the district court were such that it

was no abuse of discretion to conclude that Winkles had failed to comply with Rule 3(d).

## CONCLUSION

For the foregoing reasons, we hold that a COA is required to appeal the denial of a Rule 60(b) motion for relief from judgment arising out of the denial of a section 2255 motion. Winkles is not entitled to a COA. The request for a COA is denied, and this appeal is dismissed for lack of jurisdiction.

**Certificate of Appealability DENIED. Appeal DISMISSED.**